UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE DENNIS MONTALI, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 16-30196-DM |
| | ) Chapter 7 |
| | ) |
| CHUAN TANG, | ) <u>MOTIONS for RELIEF</u> |
| | ) <u>from STAY to COMPLETE</u> |
| Debtor. | ) <u>PENDING STATE COURT</u> |
| | ) <u>LITIGATION and REQUEST</u> |
| | ) <u>for SANCTIONS</u> |
| | ) |
| | ) April 7, 2016 |
| | ) Courtroom 17 |
| _____ | ) San Francisco, California |

<u>Appearances</u>:

| | |
|---|---|
| For the Debtor: | Samuel L. Pooler, Esq.<br>Law Office of Samuel L. Pooler<br>P. O. Box 2844<br>Richmond, California  94802-2844<br> (Specially appearing for:)<br>Dennis Yan, Esq.<br>Law Office of Dennis Yan<br>100 Pine Street, Suite 1250<br>San Francisco, California  94111<br>(415) 867-5797 |
| For the Movants<br>Francisco Garcia<br>and Oliver De<br>Leon-Garcia: | Svetlana V. Shirinova, Esq.<br>Law Offices of Svetlana V. Shirinova<br>785 Market Street, 16th Floor<br>San Francisco, California  94103<br>(415) 947-0703 |
| Digital Court<br>Recorder: | United States Bankruptcy Court<br>San Francisco Division<br>Clerk of the Court (Intake, 18th Floor)<br>450 Golden Gate Avenue<br>San Francisco, California  94120-7341<br>(415) 268-2300 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services<br>1948 Diamond Oak Way<br>Manteca, California  95336-9124 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

Case: 16-30196    Doc# 35    Filed: 04/27/16    Entered: 04/27/16 17:24:25    Page 1 of 35

1    Thursday, April 7, 2016                        9:47 o'clock p.m.

2                      P R O C E E D I N G S

3         THE COURT:  We have two motions on that.  We'll take

4    them together.

5         Good morning.

6         MS. SHIRINOVA:  Good morning, Your Honor.  Svetlana

7    Shirinova appearing for the movant.

8         THE COURT:  And we don't have a telephone appearance

9    for Mr. Yan?

10        THE CLERK:  No.

11        THE COURT:  You heard from Mr. Yan on this?

12        MS. SHIRINOVA:  I received an email on April 4.  He

13   said:  For your motion, for relief stay on April 7, will you

14   stipulate to submitting on the papers.  There is no need for the

15   hearing.

16        And I responded that I wouldn't stipulate for — I mean

17   for ruling on the papers.

18        THE COURT:  Well, I don't understand why Mr. Yan isn't

19   here.  As a procedural matter, Ms. Shirinova, you didn't comply

20   with our Local Rules by serving the debtor.  Even though the

21   debtor's represented by counsel, our rules require debtors to be

22   served.  I'm not going to deny your motion because of that, I'm

23   just calling it to your attention.

24        Secondly, to the extent that you want sanctions or the

25   case dismissed, those really don't belong in a motion for relief

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 2 of 35

1  from stay.  So you can make a motion for sanctions, if you want,

2  and you can make a motion to dismiss the case if you think

3  there's a basis to do it, but today it's only relief from stay,

4  okay?

5          MS. SHIRINOVA:  Thank you, Your Honor, for being so

6  kind and educating me.

7          THE COURT:  It's not a problem.

8          MS. SHIRINOVA:  This is my very first experience.  I

9  hope you can forgive my omissions.

10          THE COURT:  Well, I'm not going to comment on that,

11  I'll just say what I'm saying.  But here is the problem.

12          First of all, if Mr. Yan were here I would criticize

13  him too because I think — well, first of all, I'm not

14  criticizing you, I'm simply pointing out some defects.  And,

15  incidentally, the issue of service on the debtor I can even

16  treat as waived because Mr. Yan didn't raise the question,

17  presumably.

18          But here's the problem that I'm having.  You — Mr.

19  Yan, in my view, misstated the law to the court, the superior

20  court.  You made the statement in your — in your brief, and the

21  two motions are virtually the same, that the stay applies to

22  other defendants.  That's simply not true.  And most of the

23  superior court judges know that to be true, and I'm surprised

24  that you bought that.

25          Now I'll grant you, Mr. — and this is where I would

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 3 of 35

1   fault Mr. Yan.  He filed a statement that you provided to me in

2   the superior court that said that the stay applies with regard

3   to all parties.  That's an absolutely false statement of the

4   law, and he —

5           MS. SHIRINOVA:  You are correct, Your Honor, however,

6   Mr. —

7           THE COURT:  What?

8           MS. SHIRINOVA:  You are correct.

9           THE COURT:  Yeah.

10          MS. SHIRINOVA:  But the San Francisco Superior Court

11  stayed the action.  And in the second motion for relief, Ms.

12  Oliver Nekis De Leon-Garcia, we have several more defendants —

13          THE COURT:  I know, but there's no stay that protects

14  them, so —

15          MS. SHIRINOVA:  Well, the court stated.

16          THE COURT:  What I'm telling you is Mr. Yan filed a

17  document on February 22nd that told the court that it was

18  stayed.

19          MS. SHIRINOVA:  Right.

20          THE COURT:  That was a misstatement.

21          MS. SHIRINOVA:  Correct.

22          THE COURT:  And perhaps the judge bought the argument.

23          MS. SHIRINOVA:  Great.

24          THE COURT:  And incorrectly.  I think it's up to you

25  if you wish to go forward as to other defendants to inform the

1   court that that's simply not the law.

2          MS. SHIRINOVA:  See, the problem is that with other

3   defendants we can accomplish nothing.  Mr. — debtor, Isaac Tang,

4   he is an indispensable party.  We need discovery —

5          THE COURT:  He is not — he is not an indispensable

6   party.  Indispensable party means there can be no adjudication

7   without him.  That's not true.  You can call him as a witness,

8   you can depose him, you can take discovery.  He is a — he is a

9   percipient witness even if he is the debtor in bankruptcy, so

10  you're simply wrong and being mis- — fooled if you don't think

11  you can cause him to testify.

12         MS. SHIRINOVA:  Your Honor, do you —

13         THE COURT:  But the problem is I can't grant relief

14  from stay.  He's entitled to his discharge unless there is a

15  dischargeability action filed, and there isn't.

16         So this happens constantly.  I understand your client

17  was injured, and that's too bad, but Mr. Chuan — or Tang has a

18  right to file bankruptcy.  And if the debt is nondischargeable,

19  then he'll have to accept that consequence.  But if it is

20  dischargeable, he's entitled to that relief.

21         MS. SHIRINOVA:  Your Honor, may I inform the Court of

22  something that is very important?

23         THE COURT:  Um-hum.

24         MS. SHIRINOVA:  In the second case, Oliver Nekis De

25  Leon-Garcia, there are several more parties, and for them it is

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 5 of 35

1  important to allocate their liability proportionately and

2  resolve the debt or —

3           THE COURT:  What would happen if — what would happen

4  if he were — if the debtor were dead?  What would happen if the

5  debtor died instead of filing bankruptcy, you'd still go forward

6  against the other defendants, wouldn't you?  And juries — and

7  juries know how to be instructed to allocate damages.

8           MS. SHIRINOVA:  Yes, but I wouldn't be delayed in

9  moving forward.

10           THE COURT:  But the point is you shouldn't be delayed.

11  What I think you ought to consider doing is dismissing Mr. Tang

12  from the action and inform or call to the superior court's

13  attention that Tang is not protected by the automatic stay.

14  It's that simple.

15           MS. SHIRINOVA:  Your Honor, it is very important to

16  inform this Court that the bankruptcy petition is fraudulent,

17  and I have brought evidence of the debtor having substantial

18  real estate.  These are public records —

19           THE COURT:  Then file — file a motion.

20           Are you here on the Tang matter?

21           MR. POOLER:  Yes, Your Honor.

22           THE COURT:  Well, you're late.  What is your name,

23  sir?

24           MR. POOLER:  Samuel Pooler, here for Dennis Yan.

25           THE COURT:  Okay.  I'm sorry.  Say again your name,

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 6 of 35

1    please.

2              MR. POOLER:  Samuel Pooler, Your Honor.

3              THE COURT:  Oh, Mr. Pooler, I recognize you now.

4              All right.  Well, I just informed — well, Ms.

5    Shirinova had a text from Mr. Yan saying he was submitting this

6    on the papers, so she didn't know you were going to be coming

7    here.

8              All right.  So what — are you co-counsel to Mr. Yan —

9              MR. POOLER:  I'm —

10             THE COURT:  — or just covering for him today?

11             MR. POOLER:  — just covering for him today, Your

12   Honor.

13             THE COURT:  Okay.  Well, he misled the superior court

14   by informing the superior court that the stay in the Tang

15   bankruptcy stays all the other defendants, and it's not true,

16   it's not — that's simply not the law.

17             MR. POOLER:  That is correct, Your Honor.

18             THE COURT:  Well, but Mr. Yan should be called to task

19   for that.

20             Ms. Shirinova, if Tang — Ms. Tang — Mr. Tang has

21   concealed assets, then I urge you to call to the trustee's

22   attention what you believe to be the facts to see if those

23   assets can be recovered, or there are remedies that you on

24   behalf of your client can assert in the bankruptcy, but that —

25   but not relief from stay.

Case: 16-30196    Doc# 35    Filed: 04/27/16    Entered: 04/27/16 17:24:25    Page 7 of 35

1    MS. SHIRINOVA:  Your Honor, we are about to conclude
2  the trial.  We have litigated one of the cases in two years.
3  The California taxpayers have already paid for us litigating it,
4  and we —
5    THE COURT:  But why is that?  How have they done that?
6    MS. SHIRINOVA:  How?  We engaged —
7    THE COURT:  What do you mean?
8    MS. SHIRINOVA:  — the court, the mediation services,
9  the judge.  We engaged the —
10    THE COURT:  Well, okay.  Okay, okay.
11    MS. SHIRINOVA:  — presiding judge.  And then now we
12  have to relitigate by an adversary action here in the bankruptcy
13  court —
14    THE COURT:  That's —
15    MS. SHIRINOVA:  — and again the taxpayers have to pay
16  for that.  That's totally —
17    THE COURT:  But, look, the taxpayers are paying for me
18  to be here too, okay?
19    MS. SHIRINOVA:  Right.
20    THE COURT:  So let's not have this.  This isn't a
21  political rally.  The taxpayers are paying for a court system to
22  be available for you, but you don't make the argument that the
23  taxpayers have been wronged here.  The taxpayers elected
24  Congress that passed the law that said debtors can discharge
25  their debts in bankruptcy too.  So if you have — see, you're

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 8 of 35

1    mixing things.  If you believe the bankruptcy is fraudulent,

2    make a motion to dismiss it.  If you believe there are hidden

3    assets, take advantage of several different alternatives under

4    the Bankruptcy Code.  Now I can't — I can't tell you what to do.

5    That's not appropriate.  But there is a toolbox full of tools

6    for a creditor who believes that there's been some mischief, but

7    one of those tools isn't you get relief from stay.  So I'll go

8    back to my question:  If Mr. Tang had died rather than filed

9    bankruptcy, you would go forward with the trial, wouldn't you?

10          MS. SHIRINOVA:  In one of the cases.

11          THE COURT:  Okay.  But why —

12          MS. SHIRINOVA:  We —

13          THE COURT:  — not both of them?

14          MS. SHIRINOVA:  The other case, he, similarly, — I

15    need to make a motion, and so far the San Francisco Superior

16    Court is inclined to actually freeze everything.  And I don't

17    know why the judges do that.  I mean I will make a motion,

18    however, we do need him.  And he is one —

19          THE COURT:  You need — you need him but you can have

20    him.  You can put him in the witness box and ask him questions.

21    The bankruptcy stay doesn't protect him any more than if he were

22    a percipient witness and had no potential liability, or if you

23    were or I was or Mr. Pooler was.  Bankruptcy doesn't protect a

24    citizen from doing what they're required to do, which is testify

25    at trials, even when they are but for the bankruptcy an active

Case: 16-30196    Doc# 35    Filed: 04/27/16    Entered: 04/27/16 17:24:25    Page 9 of 35

1  defendant in the trial.

2          MS. SHIRINOVA:  This is a very good idea and we

3  definitely will embark on this road.  However, it would be a

4  miscarriage of justice to — for the debtor to hide behind the

5  bankruptcy protection to conceal his fraud.  And I want to

6  protect the record by saying two things —

7          THE COURT:  Then — then make the record by filing your

8  motion to deny him his discharge for hidden assets and be

9  prepared to prove it or make the record by providing the Chapter

10  7 trustee with hard evidence that there's some assets to

11  collect.

12          MS. SHIRINOVA:  I —

13          THE COURT:  You make the point in your papers that

14  this is a no-asset case.

15          MS. SHIRINOVA:  Correct.

16          THE COURT:  So just stop with that for a minute.  If

17  it's a no-asset case, then you don't need to liquidate your

18  claim vis-a-vis Mr. Tang, and therefore relief from stay is even

19  less important.  If Mr. Tang has hidden assets, turn it into an

20  asset case.

21          MS. SHIRINOVA:  All right.

22          THE COURT:  So suppose he has hidden meaningful assets

23  and you have evidence that he did, then get the trustee and say

24  to the trustee go after these assets or, alternatively, —

25          MS. SHIRINOVA:  Your Honor, —

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 10 of 35

1    THE COURT:  — undertake it to do it on your own.

2    MS. SHIRINOVA:  Somehow I am responsible for drafting

3  my motion in such a fashion that it begs a conclusion that it's

4  a no-asset case.  That's not what I was trying to say with my

5  motion.  What I was —

6    THE COURT:  Well, but it's what you said.  It's what

7  you said and it's what the notice to creditors said, right?

8    MS. SHIRINOVA:  Your Honor, that was an answer not the

9  most — not the best wording.  However, —

10    THE COURT:  Look, hold it.  I'm not here to make you

11  feel bad.  The case was noticed out as a no-asset case, wasn't

12  it?

13    Mr. Pooler, do you know?

14    MR. POOLER:  That is correct, Your Honor.

15    MS. SHIRINOVA:  They have filed it as such, but it is

16  an asset case, Your Honor.

17    THE COURT:  Ms. Shirinova, you told me this is your

18  first bankruptcy.  It's my one-millionth bankruptcy, so let me

19  tell you something.  When a debtor files a bankruptcy, the

20  debtor is supposed to indicate certain things about the — the

21  case.  And if the — let's assume the debtor is being straight up

22  and honest and doing everything correctly, if the debtor says

23  it's a no-asset case, the court takes that representation.  The

24  trustee makes her or his own investigation.  But creditors are

25  told not to file claims.  If — if a debtor reports it as an

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 11 of
35

1    asset case or if the debtor is hiding an asset and somebody

2    alerts the trustee to the possibility of an asset, then the

3    notice goes out to say:  Creditors, file your claims.  And then

4    you have a much stronger case.

5              MS. SHIRINOVA:  Your Honor, we have alerted the

6    trustee as to the existence of at least three real estate

7    belonging to the debtor.

8              THE COURT:  Okay.

9              MS. SHIRINOVA:  I have brought evidence here to this

10   Court.

11             The second important fact is that the attorney who

12   filed for Chapter 7 bankruptcy is being investigated by the

13   state Bar —

14             THE COURT:  I know.  I know he is.  I have cited him

15   for sanctions several times, but not on this case.

16             MS. SHIRINOVA:  Well, that doesn't mean you're not

17   going to have to sign —

18             THE COURT:  Ms. Shirinova, what if — what if a lawyer

19   was charged with a crime but not convicted, would that lawyer be

20   allowed to represent his client in court?  Isn't there a

21   presumption of innocence?

22             MS. SHIRINOVA:  Your Honor, I'm not saying he is not

23   innocent.  What I'm saying that if he filed a fraudulent

24   bankruptcy once, he probably did it again.  He's just known for

25   doing that —

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 12 of
35

1        THE COURT:  You're — you're pushing —

2        MS. SHIRINOVA:  — and this raises suspicion, Your

3   Honor.

4        THE COURT:  — you're pushing your luck by arguing that

5   you get relief from stay because the lawyer has a disciplinary

6   matter pending before the state Bar.  The question is whether

7   the debtor is entitled to relief.  If the debtor stashed assets,

8   I have no sympathy for the debtor, and somebody just needs to

9   prove it.  And if the trustee is given the information and

10  doesn't act on it or disregards it, then there may be

11  alternative remedies for you.  But, see, you're arguing

12  alternatively in a way that doesn't make good sense.

13        Think about what you've said.  You've said there are

14  assets, but you've said the case should be dismissed as a fraud.

15  Well, if the case is dismissed as a fraud, who is going to get

16  those assets for creditors?  You see the problem?

17        Now if your client wants to have no bankruptcy and

18  wants to try to pursue assets, that's a choice your client and

19  you can make.  But — but you make a motion to dismiss the case

20  for bad faith filing.  There are cases of bad faith filing, but

21  I can assure you that hiding assets, the remedy for — yeah —

22  hiding assets is to either collect the assets or have the debtor

23  lose the discharge in bankruptcy or both.  The best results for

24  creditors would be collect the assets and punish the debtor for

25  not disclosing them.

1          MS. SHIRINOVA:  Your Honor, the problem is that right

2    now the claim is not completed.  We don't even know how much he

3    owes to the creditors —

4          THE COURT:  I know that.

5          MS. SHIRINOVA:  — and we need to finalize that in a

6    state court against —

7          THE COURT:  No, you don't.  No, you don't if as

8    against this defendant if he gets a discharge and that if Tang's

9    liability — if Tang is eligible for a discharge in bankruptcy

10   and if your client's assertion of a claim is dischargeable, then

11   vis-a-vis this defendant there's no need to liquidate the claim.

12         You talk about wasting taxpayers' money, I'm not going

13   to turn this back on you, but what would be a bigger waste than

14   to go to superior court to liquidate a claim that is of no

15   consequence to anyone?  Now if there is insurance or there are

16   other parties, obviously.  I'm not making light of the injury

17   your client suffered.  And your client should be entitled to

18   some recompense, but not from Tang if Tang's entitled to

19   discharge the debt.  That's just the federal law.

20         So I'm not unsympathetic to the situation your client

21   finds himself in.  He was injured.  You are obviously diligently

22   pursuing his rights.  But there are other defendants, in which

23   case I think the superior court needs to be told clearly you're

24   entitled to go against those other defendants and, if not,

25   obviously I can help you here.  But I will tell you this,

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 14 of
35

1   there's an organization called the American Bankruptcy

2   Institute, ABI.  ABI has published a book to aid state court

3   judges on what to do about bankruptcy, and it's there in black

4   and white:  The automatic stay doesn't protect nondebtors.

5        I personally, personally have sat in a room down at

6   the superior court and talked to maybe 20 superior court judges

7   and explained that principle to them.  Now that's not to say

8   that the judge who has this case was there, I don't know who the

9   judge is, I don't need to know, and I'm not here to criticize

10  another judicial officer.  I would criticize Mr. Yan if he were

11  here.  I'd say:  Why in the world are you telling the superior

12  court a misstatement of the law.

13       And, Ms. Shirinova, I wouldn't hesitate to think about

14  seeking sanctions from Mr. Yan in the superior court for

15  misstating federal law.  I don't believe I have the authority to

16  sanction a lawyer in this Court for what the lawyer has done in

17  another court if he —

18       MS. SHIRINOVA:  All right, Your Honor.

19       THE COURT:  Okay.

20       MS. SHIRINOVA:  Thank you very much.  I will embark on

21  educating the judges in the San Francisco Superior Court as to

22  the rules of bankruptcy, with your blessings I hope.  And —

23       THE COURT:  Well, let — well, not with my blessing.  I

24  mean —

25       MS. SHIRINOVA:  Right.  And then —

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 15 of 35

1       THE COURT: — the one thing that I resist is turf wars

2   between courts.  I do know from my own long experience superior

3   court judges do not like to cross — get crossed up with federal

4   bankruptcy law.  And they rely on lawyers to tell them the law.

5   And maybe — maybe the judge was misinformed or made an error

6   beyond what Mr. Yan said — Mr. Pooler, you haven't said a word.

7   What do you have to say today?

8       MR. POOLER:  Your Honor, it seems that you are on the

9   track that we were going to go down anyway, so I pretty much

10  don't have much to say.  It's just my — our contention was that

11  it's a no-asset case, first and foremost, and also it's not the

12  sort of case where the courts generally grant the relief from

13  stay, such as with a secured debtor.  Or even if it is an

14  unsecured creditor, it's a child support, spousal support, —

15      THE COURT:  Sure.

16      MR. POOLER:  — or criminal restitution action.

17      THE COURT:  Right.

18      Ms. Shirinova, Mr. Tang was the proprietor of this

19  business, right?

20      MS. SHIRINOVA:  Yes, Your Honor.  Actually just for

21  the record, I am offering to this Court evidence of the debtor

22  owning the real estate.  Also I have informed the U.S. Trustee

23  about the debtor having assets.  And right now the meeting of

24  the creditors has been rescheduled or continued —

25      THE COURT:  Have you informed the case trustee?

1          MS. SHIRINOVA:  Yes, I have.  I had —

2          THE COURT:  But you said — but you said U.S. Trustee.

3   There are two.

4          MS. SHIRINOVA:  Okay.

5          THE COURT:  Don't mix them up.

6          MS. SHIRINOVA:  I informed Barry Milgrom.  That's the

7   name of the person whom I informed —

8          THE COURT:  He is — he is the case trustee.

9          MS. SHIRINOVA:  All right.  He is the case trustee.

10  Sorry for my mixed terminology.

11         THE COURT:  That's all right.  That's all right.

12         MS. SHIRINOVA:  This is really new for me.  Now I was

13  present at the meeting of the creditor where I raised the issue

14  of the debtor concealing assets.  The meeting of the creditors

15  has been continued to April 27, and the debtor has been ordered

16  to bring grant deeds.  I have brought those grant deeds and I am

17  offering this evidence to this Court —

18         THE COURT:  I don't want them.  They're not relevant

19  here.  I told you your motion mixes too many things.  I'll

20  repeat again what you don't seem to understand.

21         If Mr. Chuan [sic] hid assets, the remedy today is

22  what you're doing, it's to get the trustee, either the U.S.

23  Trustee or the case trustee — and the reason I called to make

24  the distinction is frequently the U.S. Trustee gets the

25  information and passes it onto the case trustee.

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 17 of
35

1    Mr. Milgrom is a smart lawyer, experienced lawyer,

2  experienced trustee.  If he believes that there — that there is

3  a material omission — and the reason I've stressed material is

4  you could own the Taj Mahal and not disclose it, but if the

5  mortgage on the Taj Mahal was more than the value, then it's of

6  no material consequence.  So if Mr. Tang — Tang owned Blackacre

7  that was worth a million dollars and it had $2 million of a

8  mortgage on it, it's — it's of no material consequence.

9    That does not — that does not constitute an

10  endorsement and a blessing to hide assets, but there's nothing,

11  no material consequence.  Now flip it around to say if he owned

12  Blackacre worth a million that had a $500,000 mortgage on it,

13  then he is hiding $500,000 of value, and Mr. Milgrom knows how

14  to sniff out and act on that.  And sometimes trustees take the

15  ball and run with it.  Sometimes they have to tell people, such

16  as you and your client, 'There's nothing I can do,' but that's

17  for him to decide.

18    And the reason why I'm not taking this, it's not that

19  I don't care what you've uncovered, it's just that it's not for

20  me to act on today.  And so if Mr. Milgrom sues Mr. Tang to

21  declare that the assets belong in the estate or to deny his

22  discharge or to do something, I have to take the evidence then.

23  So taking it from you now wouldn't be appropriate.  I'll take it

24  as a representation that you believe there are assets.

25    But, again, I want you to reflect on something I just

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 18 of
35

1  told you.  You make a very powerful argument here that this was

2  a bad faith filing that was done only to stop the bankruptcy and

3  it should be dismissed.  And I'll repeat myself, if I were to

4  dismiss the case we'd put Mr. Milgrom out of a job.

5      MS. SHIRINOVA:  Your Honor, I'm not asking you to

6  dismiss the case.  I need —

7      THE COURT:  Yes, you are.  You did.  You asked in the

8  motion to dismiss and sanction Mr. Yan.

9      MS. SHIRINOVA:  Well, Your Honor, my main concern here

10  is I need to finish the business of allocating liabilities in

11  the state court.  For that reason I need the debtor.  The debtor

12  did make statements that he is going to hide behind the shield

13  of bankruptcy when the workers sue him.  He knew what he was

14  doing and —

15      THE COURT:  I understand and that might very well be a

16  basis to dismiss his case.  But, again, how many times do I have

17  to tell you this, if you get his case dismissed you can't — he

18  can't use the automatic stay to avoid the consequence of the

19  state court, but you lose the forum to collect the assets that

20  he has concealed.  Now that's not to say that the California law

21  doesn't give creditors remedies when assets are concealed or

22  transferred in fraud of creditors, but it's a huge burden and a

23  huge expense.  And your client — your client, presumably, needs

24  — you know, needs some recovery for — to compensate him for his

25  injuries, and hopefully other defendants can respond.  If — and

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 19 of 35

1    I was about to ask you when I asked you if he was the principal

2    of the business, I was going to ask you —

3             MS. SHIRINOVA:  Well, he is hiding it, but he is the

4    principal —

5             THE COURT:  — did the business have liability

6    insurance?  Does your client have any recourse through any

7    insurance —

8             MS. SHIRINOVA:  Your Honor, these are intentional

9    wrongdoings.  The liability insurance doesn't cover it —

10           THE COURT:  I just — I just — okay.  So there's no

11   insurance to cover it.

12           MS. SHIRINOVA:  There is insurance, but these are

13   intentional.  He deliberately chose not to pay his workers.  He

14   employed undocumented aliens —

15           THE COURT:  Well, I thought your client's principal

16   case was the injury when he fell through the —

17           MS. SHIRINOVA:  For the injury, we have other

18   defendants and they will probably somehow compensate him, my

19   client, but we can't move forward because of the stay.

20           THE COURT:  Forget the stay for a minute.  I want to

21   understand the underlying claim.  The thrust of the suit, I

22   thought, was your client's injury when he fell through the roof.

23           MS. SHIRINOVA:  Right, that's one of the cases.

24           THE COURT:  Okay.  The other case is for payment of

25   wages?

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 20 of
35

1          MS. SHIRINOVA:  Correct.

2          THE COURT:  Well, that's probably dischargeable in

3   bankruptcy no matter what.

4          MS. SHIRINOVA:  Intentional wrongdoings —

5          THE COURT:  No, no.  You're missing the point.  The

6   bankruptcy law is very clear on the kinds of debts that may be

7   discharged and may not be discharged.  Maybe you have an

8   argument there.  I'm not here to judge it, but what I'm saying

9   is that unpaid wages is different from injury, so I accept what

10  you're saying, is that if there — I mean I guess what I'm having

11  trouble understanding is Mr. — I'm sorry — De Leon-Garcia —

12         MS. SHIRINOVA:  Right.

13         THE COURT:  — worked for Champion; is that correct?

14         MS. SHIRINOVA:  Correct.

15         THE COURT:  And in the course of his work he was told

16  to do something and he fell through the roof at the restaurant

17  and was injured.

18         MS. SHIRINOVA:  Correct.

19         THE COURT:  The restaurant did or didn't have

20  liability insurance?

21         MS. SHIRINOVA:  The restaurant will pay him for his

22  injury, but we can't move forward because the state court judges

23  believe that the automatic stay stops it —

24         THE COURT:  You keep — you keep repeating that.

25         MS. SHIRINOVA:  Right.

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 21 of
35

1     THE COURT:  And what I'm telling you is that

2  frequently, frequently plaintiffs' lawyers or bankruptcy lawyers

3  for plaintiffs will make a motion asking permission to proceed

4  against the debtor in name only so they can recover exclusively

5  from insurance, but you didn't do that either.

6     MS. SHIRINOVA:  No.  I thought I would be — I would

7  get it — what I agreed with the defense counsel that I would get

8  a relief and we would move on.  Well, —

9     THE COURT:  Nobody told me that you agreed with

10 defense counsel as to anything.

11     MS. SHIRINOVA:  Well, that has no consequences on your

12 decision or on your ruling process.

13     THE COURT:  I'm sorry, but you're simply incorrect.

14 Mr. Pooler is correct that courts, this Court and most

15 bankruptcy courts normally deny relief from stay when it's to

16 permit a plaintiff to continue against a defendant in something

17 that is not domestic support or certain kinds of things.  But we

18 also routinely grant relief from stay to permit a plaintiff to

19 recover from insurance proceeds, but you didn't ask for that.

20     What you asked for is that you want to proceed against

21 the debtor.  You said you can't proceed against other

22 defendants, well, I'm more than willing to sign an order that

23 says the stay does not protect anyone other than Chuan Tang.

24     MS. SHIRINOVA:  That would be great.

25     THE COURT:  Okay.

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 22 of
35

1        MS. SHIRINOVA: We'll prepare such an order.

2        THE COURT: And — and to say that the bankruptcy stay

3 does not prevent Chuan Tang — Chuan Tang from either being

4 deposed or testifying as a witness.

5        Again, Mr. Pooler, you don't doubt either of those —

6        MR. POOLER: No, Your Honor, I —

7        THE COURT: — issue —

8        MR. POOLER: — completely agree with them.

9        THE COURT: So it may well be, Ms. Shirinova, that

10 insofar as the De Leon-Garcia injury claim, you — I will give

11 you an order that says Tang is protected by the stay, it doesn't

12 protect anybody else unless they are in their own bankruptcy,

13 and the Tang stay doesn't prevent him from being a witness; it

14 doesn't even — it doesn't even prevent a court, if you had a

15 bench trial, or a jury, if you had a special verdict, from

16 making factual determinations of what Tang did, but they're not

17 binding on him as a matter of claim preclusion.

18        So, in other words, suppose you had defendants A, B,

19 and C, and defendant A is in bankruptcy. A bench trial could

20 say: A did this, A gave the instructions to go fix the fan, and

21 B did whatever he did and C did whatever he did; and, as a

22 result, the plaintiff was injured, it would not be binding as a

23 matter of — the old term — *res judicata*, — the modern term —

24 claim preclusion against Mr. Chuan Tang because the action can't

25 proceed against him, but you can still find a fact, okay, and —

1   and —

2           MS. SHIRINOVA:  Your Honor, thank you.  That's a

3   solution that —

4           THE COURT:  — and Mr. Tang can be called to testify

5   and ask questions, and, you know, do whatever he has to do.

6           MS. SHIRINOVA:  Such a court order would resolve the

7   problem for one of the plaintiffs substantially.  And we'll be

8   very happy to prepare an order for your editing and final

9   reduction.

10          THE COURT:  Well, it's not — well, okay.

11          Now, —

12          MS. SHIRINOVA:  We will be very happy to do that.

13          THE COURT:  — Mr. Pooler, should that be served on you

14  or Mr. Yan?

15          MR. POOLER:  On Mr. Yan.

16          THE COURT:  All right.  Well, then — well, but you've

17  got to make sure — I mean you know I'm a little critical of Mr.

18  Yan today for his misstatement of the law, so —

19          MR. POOLER:  Serve it on me, Your Honor, and I will

20  make sure that he gets it.

21          THE COURT:  Well, serve it on both Mr. Pooler — if you

22  don't have Mr. Pooler's mailing address, get it from him, or his

23  electronic — are you an electronic filer, Ms. Shirinova?  Okay,

24  you're not —

25          MS. SHIRINOVA:  No, I am not.

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 24 of
35

1          THE COURT:  — electronic either.

2          You're electronic, aren't you?

3          MR. POOLER:  Yes.

4          THE COURT:  In this case, have you appeared —

5          MR. POOLER:  Not in this case, no, Your Honor.

6          THE COURT:  Well, if you don't appear in this case it

7    won't get to you, so all right.  Serve it on him by mail and

8    serve Mr. Yan.

9          And so the ruling is that the motion is denied, but

10   nothing in the Chuan Tang bankruptcy stays or protects other

11   parties not in bankruptcy —

12         MS. SHIRINOVA:  That's a great ruling.

13         THE COURT:  And I'm — and I'm not going to say the

14   superior court was wrong.  I'm going to say, I'm just going to

15   make a statement about federal bankruptcy law.

16         MS. SHIRINOVA:  We're not going to tell him that, Your

17   Honor.  I will educate him.

18         THE COURT:  You — you'll have to him that.

19         MS. SHIRINOVA:  Right.  That's one of the motions and

20   that does resolve the problem.  That's for the first motion for

21   Francisco Guacamaya Garcia in which we settled the case and the

22   debtor had about $10,000 to pay.  And then instead of bringing

23   money in a week, they filed for bankruptcy.  We had a trial

24   scheduled and we would like to either proceed with the trial

25   because his wife is a defendant there and we can get a judgment

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 25 of
35

1 against her as a joint employer.

2   THE COURT:  Then — then go — then proceed against him.

3   MS. SHIRINOVA:  Then we can have a similar ruling,

4 correct, Your Honor —

5   THE COURT:  Well, you — Mr. Yan filed the same notice

6 in that case too, didn't he?

7   MS. SHIRINOVA:  Yes, he did.

8   THE COURT:  Well, you can have the same ruling.  I'm

9 not granting relief, but I will clarify that it doesn't protect

10 anyone else.

11   MS. SHIRINOVA:  All right, Your Honor.

12   THE COURT:  Now if the wife wants to file bankruptcy,

13 she can.  And let me also caution you that if you have spouses,

14 that community property is protected as a matter of bankruptcy

15 law.

16   MS. SHIRINOVA:  If they both file?

17   THE COURT:  Even if only one of them files.  In other

18 words, if you have two spouses in California whose assets are

19 community property — and that's a fact question because they

20 could have separate assets.  But suppose we have A and B — I

21 used to say husband and wife, can't say that anymore.  Suppose

22 we have two people who are lawfully married and they own

23 property that is community property.  That property is subject

24 to administration in the bankruptcy estate as filed —

25   MS. SHIRINOVA:  How about his share of the community

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 26 of
35

1   property?

2           THE COURT:  That community property is subject to

3   administration in the spouse's bankruptcy, all of it.  Now there

4   are different outcomes:  If it's exempt, if there is some money

5   that's exempt, then the trustee doesn't care.  But let me —

6   again, let's use a very extreme example to prove the point.

7           Suppose two people who are married own as community

8   property Blackacre and Blackacre is worth a half a million

9   dollars — equity.  The spouse who files bankruptcy has put that

10  community property asset into the bankruptcy estate and the

11  nonbankrupt spouse cannot dispose of that community property.

12  It's just where the nature of the property controls the

13  administration of it.

14          So if Mrs. — whoever the other person was, Mr. Tang's

15  spouse, if she was going to pay money, she can't pay it if it

16  was community property.  If it was separate property, that's

17  something else again.

18          Do you know anything about this, Mr. Pooler?

19          MR. POOLER:  No, Your Honor.

20          THE COURT:  Okay.  So, again, I —

21          MS. SHIRINOVA:  Your Honor, but there is —

22          THE COURT:  — can't really say.  Look, — look, if your

23  client agreed to a $10,000 figure and the defendants agreed,

24  then maybe there's a way for them to figure out how to get your

25  client paid.  That's fine if they can get — if your client can

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 27 of
35

1  get paid.

2          MS. SHIRINOVA:  Your Honor, there is a reason why the

3  debtor has not put three pieces of real estate into his

4  bankruptcy petition.

5          THE COURT:  You're back to the same thing again.  You

6  keep circling back.  Act on it, take whatever action is

7  appropriate.  I encourage you to do that.  I am not condoning

8  hiding assets.  But you said he was supposed to bring a grant

9  deed; does that mean he transferred the asset?

10          MS. SHIRINOVA:  Yes.  I have the —

11          THE COURT:  Well, if —

12          MS. SHIRINOVA:  — grant deed right here.

13          THE COURT:  Ms. Shirinova, if he transferred them then

14  he didn't hide them.

15          MS. SHIRINOVA:  But he — I have declarations under

16  penalty of perjury.  I can bring the workers in here.  He was

17  bragging to the workers that that's exactly what he would do not

18  to pay them —

19          THE COURT:  Look, I'm going to say this again.  If I

20  owned Blackacre last month and I transferred it to my wife as

21  separate property or to my friend — leave the spouse out.  Then

22  on the day I filed bankruptcy I'm not hiding it if I don't

23  disclose it because I didn't have it.  I have to disclose a

24  transfer I made, but I —

25          MS. SHIRINOVA:  The transfer was not disclosed.

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 28 of
35

1    THE COURT:  If the transfer isn't disclosed and the

2  transfer falls within the time it needs to be disclosed, then

3  there are consequences.  But what I'm trying to tell you is you

4  can't be faulted for not disclosing an asset that you

5  transferred away.  You can be faulted for not disclosing a

6  transfer.  But do you see how you're getting the concepts mixed

7  up?  You've said three times that he didn't disclose assets, and

8  then finally it comes out that he transferred them.  So maybe

9  his fault was not disclosing a transfer of assets.

10    MS. SHIRINOVA:  Your Honor, of course I am not very

11  competent in bankruptcy law.  At least I honestly admit that —

12    THE COURT:  You shouldn't — you shouldn't keep saying

13  that.

14    MS. SHIRINOVA:  Well, it is what it is.  I have to

15  deal with that.  It's very difficult.  However, my brief

16  education indicated that if he has community property asset, he

17  needed to put it on the petition, and it's not there.

18    THE COURT:  Ms. Shirinova, if he transferred it, — who

19  did he transfer it to?

20    MS. SHIRINOVA:  To his wife.

21    THE COURT:  As what?

22    MS. SHIRINOVA:  As a separate property.

23    THE COURT:  Then it's not community.  Don't you see?

24  You —

25    MS. SHIRINOVA:  They don't have it —

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 29 of
35

1          THE COURT:  You answered your own question.  If — if I

2    transferred my community interest to my spouse, then I don't

3    show on my bankruptcy that I have a community interest.  I

4    concede to you I should show in another section of the

5    bankruptcy papers that I transferred it.  Why?  So trustees or

6    creditors can look to see if the transfer was proper.  It may be

7    completely improper.  And evidence that the debtor was bragging

8    about hiding assets is powerful evidence.

9          Again, you might have a very strong case for the

10   trustee to recover value if there is equity there, and I'll go

11   back to what I said before.  If you transfer your interest in a

12   house on which you have no equity, the transfer has no economic

13   consequences.  If you transfer value in fraud of your creditors,

14   there are serious consequences because the transferee may have

15   to give it back and the debtor may lose his discharge.  That's a

16   double kill.  So — so someone who transfers assets to defraud

17   the creditors runs the risk of losing a discharge as a

18   punishment for misconduct and the transferee may have to give it

19   back.  But neither will happen if the bankruptcy is dismissed.

20         So, again, I'm not going to lecture you any longer,

21   but if there are assets to collect, equip the person who can

22   collect them, — it sounds like you're making progress there —

23   and if there are consequences to misstatements under penalty of

24   perjury or hiding things, take advantage of what the law says

25   you can do, properly so.  But that's not the same as relief from

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 30 of
35

1    stay.

2            So we've beaten this to death.  I'm not going to grant

3    relief from stay in either state court action.  I will clarify

4    in both state court actions that Mr. Tang — no defendant, no

5    nondebtors are protected by the stay, and this debtor is not

6    prevented from being called as a witness or being deposed, or

7    otherwise.  You just simply can't proceed against him.  Got it?

8            MS. SHIRINOVA:  Got it.  Your Honor, do we have a tape

9    of today's hearing?

10           THE COURT:  A what?

11           MS. SHIRINOVA:  A tape-recording.

12           THE COURT:  You just have to order one.

13           MS. SHIRINOVA:  Yes.  I will order one.  It will help

14   me to prepare —

15           THE COURT:  It's not on tape.  It's digital.  You can

16   pay the Clerk a fee for —

17           MS. SHIRINOVA:  Um-hum.

18           THE COURT:  — an unofficial transcript.

19           MS. SHIRINOVA:  Yes.

20           THE COURT:  What's the going CD rate, 25 bucks?

21           THE CLERK:  You know, I think it's — I believe so.

22           THE COURT:  It's whatever.  It's a modest amount of

23   money.

24           MS. SHIRINOVA:  Yeah.  I would —

25           THE COURT:  And — and/or if you want a formal

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 31 of
35

1  transcript you'll have to pay more money to get a formal written

2  transcript by the court reporter, but —

3           MS. SHIRINOVA:  I would like to listen one more time

4  to everything you have said so that it will help me preparing

5  the order —

6           THE COURT:  Okay.  Well, you can — can you give her

7  the form or tell her what to do to get the form?

8           MS. SHIRINOVA:  All right.

9           THE CLERK:  That's correct.

10          THE COURT:  Okay.  Well, Ms. Parada can tell you.

11 After we go off the record, she'll tell you what you need to do.

12          MS. SHIRINOVA:  Okay.  As I understand, then you are

13 denying both motions today, right?

14          THE COURT:  Well, I'm denying them, but I'm agreeing

15 to clarify a point for you on the orders.

16          MS. SHIRINOVA:  Right.  And then can I bring them

17 again?

18          THE COURT:  Well, —

19          MS. SHIRINOVA:  Because usually this —

20          THE COURT:  — why would you bring them again?

21          MS. SHIRINOVA:  If the need appears, I —

22          THE COURT:  Look, maybe the last piece of advice I can

23 give you is to think about consulting a bankruptcy specialist to

24 work with you on this or —

25          MS. SHIRINOVA:  I did, it's just —

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 32 of
35

1    THE COURT:  Well, —

2    MS. SHIRINOVA:  — apparently I haven't — I mean the

3 consultation hasn't encompassed everything that I've learned

4 today.

5    THE COURT:  Well, I know, but you're asking me if you

6 can bring another motion.  I just denied your motion.  What — if

7 there — if there is something that changes, if there is some

8 reason, then maybe you can.

9    MS. SHIRINOVA:  All right.

10    THE COURT:  But I think if you are unable to engage

11 competent bankruptcy help, then your clients run the risk of

12 something going wrong because this is a very specialized area of

13 the law and time limits are short and the rules are tight.  And,

14 you know, it is what it is because Congress said centuries ago

15 honest debtors are entitled to a fresh start.

16    MS. SHIRINOVA:  Honest debtors, Your Honor.

17    THE COURT:  And dishonest debtors don't get much

18 sympathy, —

19    MS. SHIRINOVA:  Right.

20    THE COURT:  — but they still get due process and they

21 still get their day in court, and you have to follow the

22 procedures.  And they have — there are very tight time limits.

23 I'm going to leave it at that.

24    Okay?  So I'll look forward to getting orders in both

25 cases consistent with what I said.  You serve it on Mr. —

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 33 of
35

1          MS. SHIRINOVA:  I will.

2          THE COURT:  — Mr. Pooler and Mr. Yan.

3          All right.  Thank you very much.

4          MS. SHIRINOVA:  Thank you.

5          MR. POOLER:  And I'd like to apologize, Your Honor.  I

6    would like to apologize to both the Court and to counsel for

7    being late.  I —

8          THE COURT:  Oh, you were 30 seconds late, Mr. Pooler.

9    We won't —

10          MR. POOLER:  Okay.  Good.  Thank you, Your Honor.

11          THE COURT:  No apology necessary.

12          MR. POOLER:  Okay.  Thank you.

13          THE COURT:  Thank you.

14       (The hearing was adjourned at 10:25 o'clock a.m.)

15                              —o0o—

16

17

18

19

20

21

22

23

24

25

Case: 16-30196   Doc# 35   Filed: 04/27/16   Entered: 04/27/16 17:24:25   Page 34 of
35

State of California            )
                              )     SS.
County of San Joaquin         )


        I, Susan Palmer, certify that the foregoing is a true
and correct transcript, to the best of my ability, of the above
pages, of the digital recording provided to me by the United
States Bankruptcy Court, Northern District of California, of the
proceedings taken on the date and time previously stated in the
above matter.

        I further certify that I am not a party to nor in any
way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber
by the American Association of Electronic Reporters and
Transcribers, Certificate Nos. CER-124 and CET-124.  Palmer
Reporting Services is approved by the Administrative Office of
the United States Courts to officially prepare transcripts for
the U.S. District and Bankruptcy Courts.


                              Susan Palmer
                              Palmer Reporting Services

                              Dated April 25, 2016